FILED

2026 Jul-27  PM 11:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| CANDICE HALE,<br>    Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO.:<br>7:25-cv-01786-EGL |
| PETER MOHLER, PAUL MESSINA,<br>JAMES DALTON, and UTZ McKNIGHT,<br>    Defendants. | ) ) ) ) ) | |

**DECLARATION OF CANDICE HALE**

COMES NOW, Dr. Candice Hale, ("Hale") and files her Declaration in support of her Motion to Reinstate her claims against Peter Mohler, Paul Messina, James Dalton, and Utz McKnight (University of Alabama Defendants) and Opposition to Enforce Settlement Agreement.

1. My name is Dr. Candice Hale, and I am the plaintiff in a federal § 1983 First Amendment retaliation case against University of Alabama (UA) officials (Hale v. Mohler, Case No. 7:25-cv-01786-EGL, N.D. Ala., Western Division).

2. On September 16, 2025, after working with UA for roughly 10 years, I was terminated from the University of Alabama following protected speech related to a Charlie Kirk campus event.

3. Prior to termination, I had never had a write-up or employment issue with UA.

4. On September 19, 2025, I was placed on administrative leave based on the same incident at Auburn University.

5. On October 2, 2025, I first met with my former attorney, Kira Fonteneau ("prior counsel"), to discuss the terms of the representation agreement and my experiences with the employment dispute.

6. On the same day, I retained Kira Fonteneau (The Workers' Firm, LLC) under a contingency (45%) fee agreement.

7. At that time, I wanted to obtain justice and accountability against the University of Alabama and Auburn University. I also wanted to publish an approved statement that allowed me to tell my side of the story.

8. I also have a companion § 1983 case against Auburn University (M.D. Ala., trial set June 2027) for similar First Amendment retaliation arising from the same period. I was permanently banned from the campus or property of Auburn University. After working for AU since August 2023, I was labeled a criminal and terrorist and told, in writing, that if I am found on campus or any property owned or leased by Auburn University, I would be subject to criminal prosecution.

2

9. On November 18, 2025, officials at the University of Alabama contacted my prior counsel regarding a potential settlement.

10. On November 20, 2025, my prior counsel negotiated a settlement that violated my three explicit written conditions—no ban on rehire, a formal apology, and a sit-down meeting with university leadership, as more specifically listed below.

   a) Sit-down formal settlement conference with the President or the Provost for the University of Alabama/ A formal apology from US.

   b) No Non-Disclosure Agreement; The ability to tell my side of the story has always been a core concern and material term for resolution.

   c) Ability to be rehired at my alma mater: I am an educator, and a ban on rehiring at every UA and AU campus in the state effectively prevents me from working as a professor at a four (4)- year institution in the State of Alabama.

11. The settlement my prior counsel presented contained none of these, and instead included permanent employment bans and an NDA.

12. I never agreed to the material terms. My only written edit to any settlement-related document was to the wording of a proposed public statement, submitted May 13, 2026 — not to the settlement's substance.

3

13. On November 20, 2025, in addition to the mandatory terms stated above, I also communicated to prior counsel that my minimum monetary settlement demand was $100,000.00.

14. On November 21, 2025, I contemporaneously documented the prior day's $100,000 authorization and NDA refusal in group iMessages with my support group, corroborating the November 20 email exchange with prior counsel. My support group included three other women educators employed by four-year universities located in Alabama.

15. From my perspective, if I were to accept the settlement terms, I would be accepting a permanent ban from rehire with the University of Alabama and Auburn University. The ban would apply to all campuses in the state.

16. The financial harm caused by the termination and the proposed settlement terms has been severe and ongoing. Between July 2025 and June 2026, I incurred documented medical expenses of $249,641.67, including a right thumb trapeziectomy ($130,487.30), ongoing Vyepti infusions at $15,116.64 per session for intractable migraines that worsened following my termination, post-surgical occupational therapy, and specialty pharmacy costs for medications treating chronic pruritus of unknown origin — a condition whose flare-ups are directly exacerbated by stress. My projected ongoing annual medical costs are approximately $137,509, excluding a

second anticipated hand surgery. My Auburn University health insurance terminates on August 15, 2026; COBRA continuation coverage would cost $658.56 per month. The $60,000 net settlement amount proposed by prior counsel — which, after her 45% contingency fee and asserted $27,883.92 lien, would have yielded me approximately $5,116 — would not have covered a single month of my documented medical expenses, let alone the ongoing financial harm caused by the employment ban, which effectively eliminates approximately 60% of four-year institution professorships available to me in the State of Alabama

17. My prior counsel filed a motion on May 4, 2026 (Doc. 22) falsely telling the Court the parties had "resolved this matter in principle." The case was dismissed without prejudice on June 12, 2026 (Doc. 24) based on that false representation. However, the record does not reflect that a request for dismissal was communicated to the Court.

18. I terminated my prior counsel by email and certified mail on May 29, 2026.

19. Prior counsel did not file her motion to withdraw until June 16, 2026 — 18 days later — and the Court denied that motion without prejudice (Doc. 27), ordering the parties to meet and confer and file a joint report by June 26 on whether a meeting of the minds had occurred.

20. On May 12, 2026, prior counsel emailed a 10-point "summary" of the proposed settlement to me as a non-editable draft.

21. I never edited, negotiated, or agreed to the settlement amount, the NDA, the employment bans, or the leadership meeting provision. My only edit was to public statement language — not material settlement terms.

22. I never authorized or confirmed agreement to reduce the $100,000.00 settlement compensation to $60,000.00.

23. On May 13, 2026, I emailed prior counsel four (4) clarifying questions regarding the NDA (writing rights), unemployment concerns, tax treatment, and public statement.

24. On June 18, I filed a Notice of Irreconcilable Conflict of Interest (Doc. 28) explaining that prior counsel's asserted attorney's lien ($27,883.92) created a direct financial conflict on the very question the joint report was meant to address — she stood to collect only if the disputed settlement was enforced.

25. Prior counsel filed a joint status report on June 19 (Doc. 29) without my authorization, without my review, and without my knowledge prior to filing, falsely representing that I had "refused to meet and confer" and that the parties had reached a "meeting of the minds" on all material terms. Both representations are false and contradicted by the documentary record, including Ms. Fonteneau's own emails. I filed a Pro Se Response (Doc. 31)

correcting the record, followed by a Pro Se Status Notice (Doc. 34) on June 26 — the deadline day — directly addressing the Court on the meeting of the minds question and requesting reinstatement of the case.

26. I never accepted the terms of the proposed settlement agreement, and I did not authorize prior counsel to do so on my behalf.

"I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on ___ July 27, 2026

Dr. Candice Hall

7